# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

LAURIE H.,           )
                          )
      Plaintiff       )
                          )
v.                    )      2:18-cv-00329-GZS
                          )
SOCIAL SECURITY ADMINISTRATION  )
COMMISSIONER,         )
                          )
      Defendant     )

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has a severe impairment, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the August 18, 2017, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2.)[1] The ALJ's decision tracks the

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has a severe, but non-listing-level impairment of bipolar disorder. The ALJ concluded Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels with certain non-exertional limitations. According the ALJ, Plaintiff "must avoid a variety of instructions or tasks, but is able to understand to carry out simple one or two step instructions and is able to understand to carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations; [Plaintiff] would be able to work in 2-hour blocks of time within this range of work over a normal workday and workweek; cannot work with the public, but can work with superiors and co-workers and is able to adapt to simple changes." (ALJ Decision ¶ 5, R. 16.)

Considering Plaintiff's RFC, including the non-exertional limitations, the ALJ determined Plaintiff was unable to perform any past relevant work. After consideration of the testimony of a vocational expert and in accordance with the expert's testimony, the ALJ concluded Plaintiff could perform the representative jobs of laundry sorter, cleaner housekeeper, and dishwasher, which jobs exist in significant numbers in the national economy. The ALJ, therefore, found Plaintiff was not disabled.

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y*

*of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### DISCUSSION

Plaintiff contends the ALJ erred (1) at step 2, when she failed to find Plaintiff had other severe impairments, including ADHD, anxiety, and PTSD, (2) in her evaluation of the medical opinions in the formation of Plaintiff's RFC, and (3) in her assessment of Plaintiff's subjective complaints.

#### A. Step 2 Findings

At step 2 of the sequential evaluation process, a claimant must demonstrate the existence of impairments that are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a de minimis burden, designed merely to screen groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically

considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.* A severe impairment, however, may be deemed non-severe through the ameliorative influence of medication and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552 at *2 n.2 (Jan. 23, 2009), *aff'd* 2009 WL 361193 (Feb. 12, 2009).

Finally, if error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue*, No. 1:09–cv–220–JAW, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

A review of the ALJ's decision and the record reveals that the ALJ considered the relevant evidence before concluding that Plaintiff's sole severe impairment was bipolar disorder. The record demonstrates that Plaintiff's ADHD and anxiety were adequately managed through medication. (R. 13, 14, 806, 808, 812, 868, 872, 880, 884.) In addition, as the ALJ noted, the October 2009 evaluation of Steven Stout, M.D. supports a finding of

bipolar rather than PTSD.[2]  (Ex. 9F.)  The ALJ's determination that bipolar disorder is Plaintiff's sole severe impairment is thus supported by the record.

Regardless of whether Plaintiff suffers from PTSD or whether Plaintiff's ADHD or anxiety could fairly be deemed severe, Plaintiff has not demonstrated that the conditions would have warranted a different result.   The non-exertional limitations incorporated into Plaintiff's RFC as the result of Plaintiff's bipolar disorder are significant.  The record lacks any persuasive evidence to suggest that a finding that Plaintiff had severe impairments of ADHD, anxiety, or PTSD would result in additional limitations that would support or compel a disability finding.

### B.  Assessment of Evidence

Plaintiff maintains the record lacks substantial evidence to support the ALJ's RFC and disability determinations.  In assessing Plaintiff's RFC, the ALJ reviewed the relevant expert findings and opinions.

The ALJ reasonably gave great weight to the opinions of Brian Stahl, Ph.D., and David Houston, Ph.D., two psychologists who reviewed the available medical evidence on behalf of Disability Determination Services (DDS), and the opinion of Marvin Blase, M.D., who completed a consultant's review of the record and concluded the DDS findings were "reasonably supported." (Ex. 16F, R. 845.)  As the ALJ noted, the opinions were consistent with the treatment record.   The record reflects Plaintiff demonstrated normal mental functioning, judgment, and thought process.  (R. 389, 729, 750, 778, 839, 881, 884), and

---

[2] Dr. Stout noted that Plaintiff "describes a history of potential PTSD symptoms, bur currently does not meet full criteria for this disorder." (R. 729.)

was cooperative and oriented.  (R. 389, 739, 746, 778, 839.)

The ALJ's decision is also supported by the findings of John Whelan, Psy.D., who performed a consultative examination in November 2015.  While Dr. Whelan found that Plaintiff might have some concentration issues, Dr. Whelan concluded Plaintiff had the "apparent cognitive ability to be able to do work that is simple and repetitive in nature." (Ex. 10F, R. 752.)

The ALJ also supportably discounted the opinions of Patrice Lynch, LCPC-C, with whom Plaintiff counseled for a period of time, and Lori Nicholas, PMH-NP, who upon performing a mental RFC assessment, determined Plaintiff had marked impairment in the ability to sustain concentration on very short and simple instructions and the ability to interact socially. (Ex. 23F, R. 889-90.)  Ms. Nicholas' opinion is not only inconsistent with the opinions of the DDS reviewing experts, but the opinion is also inconsistent with her own records.  For instance, as the ALJ noted, in her treatment notes, Ms. Nicholas regularly described Plaintiff's judgment and insight as "fair" and her memory as "intact," and did not document psychomotor agitation. (R. 758, 759, 762, 763, 765.)  The ALJ also reasonably observed that Ms. Lynch's opinion was not consistent with Plaintiff's history, including the dates worked and the reasons Plaintiff ended work. (R. 19.)  Furthermore, to the extent Plaintiff contends the ALJ should have included in the RFC a limitation on Plaintiff's ability to interact with co-workers and supervisors, the medical records, which at various times describe Plaintiff as cooperative, and the evidence regarding Plaintiff's activities do not support such a limitation.

Overall, the ALJ's RFC finding includes significant non-exertional limitations due

to Plaintiff's mental health impairment. Importantly, Plaintiff is limited to tasks that involve simple one or two step instructions with uninvolved instructions and precludes work with the public. The ALJ's RFC finding thus recognizes Plaintiff's mental health impairment is severe.[3] The record, however, includes substantial evidence to support the ALJ's finding that Plaintiff retains the capacity to work.

### C. Evaluation of Plaintiff's Symptoms

Plaintiff contends the ALJ did not properly evaluate her subjective complaints. Social Security Ruling 16-3p "provides guidance about how [components of the Social Security Administration will] evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act (Act) and blindness claims under Title XVI of the Act." 81 Fed. Reg. at 14166. In the statement of purpose, the Ruling explains that, based on a commissioned study, the Administration determined it should "eliminat[e] the use of the term 'credibility' from [its] sub-regulatory policy," i.e. former Ruling 96-7p, because the term does not appear in the Administration's regulations. *Id.* at 14167.

Ruling 16-3p provides that the evaluation of a claimant's symptoms is governed by a two-step process consisting of (1) a determination whether the claimant has one or more medically determinable impairments that reasonably could be expected to produce the alleged symptoms, and (2) an evaluation of the intensity and persistence of the symptoms

---

[3] To the extent Plaintiff contends the ALJ failed to find Plaintiff's condition met or equaled a listing, Plaintiff's argument is undeveloped and the evidence that supports the ALJ's RFC finding also supports her decision that the condition does not equal a listing.

to determine the extent of any resulting limitation in the claimant's ability to perform work-related activities. *Id.* at 14167–68. While the Ruling clarifies the extent to which an ALJ can rely on a credibility determination (i.e., adjudicators "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation"), the Ruling does not dictate that any particular evidence is immaterial. *Id.* at 14171. The Ruling specifically provides that the second step of the process for evaluating symptoms requires the consideration of "other evidence" if a fully favorable disability decision cannot be reached solely on the objective medical evidence. *Id.* at 14169. Such evidence "includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms." *Id.*

The Ruling recognizes that a claimant or others might make statements that are consistent or inconsistent with the claimant's subjective report of symptoms. The Ruling thus provides:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities for an adult.... In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities ....

*Id.* at 14170. Furthermore, the Ruling specifies that the Administration "will consider the consistency of the individual's own statements." *Id.* While consistency generally favors the claimant, inconsistency may mean, "but does not necessarily mean," that the claimant's

report of symptoms is "inaccurate." *Id.*[4] "[T]he deferential standard of review . . . continues to apply following the adoption of SSR 16-3p, but for the use of the term 'credibility.'" *Christopher D. v. Berryhill*, No. 1:17-cv-377-JHR, 2018 WL 4087477 (D. Me. Aug. 24, 2018).

In considering a plaintiff's arguments, a court must be mindful that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks omitted). "An applicant's residual functional capacity is, after all, an administrative finding reserved to the Commissioner." *Id.* at 14 (citing 20 C.F.R. §§ 416.927(d)(2), 416.946).

Here, the ALJ supportably found that Plaintiff's reports of her limitations were inconsistent with other evidence, including information contained in the medical records. As the ALJ noted, contrary to Plaintiff's contentions regarding her ability to interact and her activity level, the record reflects Plaintiff spent time with and cared for her granddaughter (R. 759), was in some way involved in legal proceedings regarding the custody of her granddaughter (R. 635), enjoyed time with her sister (R. 300), and cared for an aging family member. (R. 878.) The ALJ also reasonably cited the medical records that

---

[4] *See also*, *e.g.*, *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.").

described Plaintiff as having her judgment and insight intact and to be in no acute distress as further evidence raising questions about the reliability of Plaintiff's report of symptoms.

A review of the record thus reveals that in her assessment of Plaintiff's subjective complaints, the ALJ considered evidence that was relevant to and probative of the reliability of Plaintiff's complaints. Plaintiff has not demonstrated that the ALJ erred in her assessment.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge


Dated this 4th day of April, 2019.